```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
HECTOR GABRIEL PEREZ-GALLEGOS,                              :
                                                            :
                              Petitioner,                   :
                                                            :    08 Civ. 1197 (GEL)
            -v.-                                            :    04 Cr. 1274 (GEL)
                                                            :
UNITED STATES OF AMERICA                                    :    OPINION AND ORDER
                                                            :
                              Respondent.                   :
                                                            :
------------------------------------------------------------x
```

Hector Gabriel Perez-Gallegos, pro se.

Michael J. Garcia, United States Attorney for the Southern District of New York (Rebecca A. Rohr, Assistant United States Attorney, of counsel), for the United States of America.

GERARD E. LYNCH, District Judge:

Hector Gabriel Perez-Gallegos ("petitioner" or "defendant"), a prisoner serving a sentence of 77 months' imprisonment following his plea of guilty to a charge of illegally re-entering the United States without permission after having been deported after conviction of an aggravated felony, 8 U.S.C. § 1326, brings this motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at the time of his plea and sentencing. The motion is without merit and will be denied.

To demonstrate ineffective assistance of counsel, a petitioner must show both (1) that his attorney's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that he was prejudiced by his attorney's defective performance. Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984). None of Perez-Gallegos's various claims meets this standard.

DISCUSSION

I. Ineffective Assistance During the Plea Proceeding

Perez-Gallegos somewhat diffidently argues that he "could pursue a claim that his plea was not made knowingly, voluntarily and intelligently," because he "might argue that counsel failed to fully explain the consequences of the plea agreement." (Pet. Mem. 9.) The transcript of the plea proceeding completely rebuts any claim that Perez-Gallegos did not plead knowingly and intelligently. Even before the proceeding began, Perez-Gallegos read and signed an advice of rights form detailing the rights that he would waive by pleading guilty. (Plea Tr. 2, 6.) Notwithstanding this written advice, the Court orally addressed the defendant, and fully described all the rights specified by Fed. R. Crim. P. 11(b)(1), and Perez-Gallegos acknowledged that he understood them. (Id. 6-9.) The Court also fully described the nature and elements of the charge to which defendant was pleading (id. 9-10), and the penalties attached to the offense (id. 10-11). The Court also determined that there was a factual basis for the plea, by addressing the defendant, who admitted that he re-entered the United States without permission after having been deported following a criminal conviction for sale or possession of cocaine, and that he knew that he was not allowed to do so. (Id. 13-14.) The Court established that defendant waived any possible defense of lack of venue. (Id. 15-16.)[1]

---

[1] Although Perez-Gallegos does not question the knowing and intelligent nature of this waiver, defense counsel's affidavit in response to the petition, in an excess of caution, notes that his interview notes disclose that he had fully addressed the facts of the defendant's discovery in the United States, and learned that Perez-Gallegos was in fact found by the immigration authorities within the Southern District of New York. (Declaration of Steven M. Statsinger, Esq. ("Statsinger Decl."), dated March 25, 2008, ¶¶6-7.) Thus, while defendant himself, understandably not familiar with the precise boundaries of the district, indicated that he had lived in Brooklyn after returning to the United States, thus raising the question of venue in the Court's mind (Plea Tr. 14-15), the Government could in fact readily establish proper venue at trial, and

Nor is there any basis for petitioner's allegation that his attorney "failed to fully explain the consequences of the plea agreement." (Pet. Mem. 9.) As defense counsel points out, the simple fact is that there was no plea agreement. (Statsinger Decl. ¶ 4.) Indeed, contradicting his own contention, Perez-Gallegos himself admits that he pled guilty "without a plea agreement." (Pet. Mem. 3.) The plea transcript confirms not only the bare fact that there was no agreement (Plea Tr. 2), but also that the defendant fully understood the terms of his plea of guilty. Defense counsel stated, in defendant's presence, that there was no plea agreement in the case. (Id. 2.) Perez-Gallegos acknowledged that he had discussed the charges and the facts of the case with his attorney, that he had had adequate time to do so, and that his attorney had told him the consequences of pleading guilty. (Id. 5-6.) The Court specifically advised defendant of the maximum punishment that could be imposed, which included a prison term far in excess of the sentence Perez-Gallegos actually received. (Id. 10-11.) Moreover, the Court described the sentencing process, including the role of the Sentencing Guidelines (which defendant admitted his lawyer had discussed with him), and emphasized that the actual sentence would be based on the statutory purposes of sentencing and could be higher than the guidelines recommendation. (Id. 11-12.) The Court described the letter provided to the defendant by the Government pursuant to United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991), which contained the Government's estimate that the Guidelines would recommend a sentence between 46 and 57 months of imprisonment. The Court emphasized, however, that this estimate was

> just the prosecutor's present opinion. She could change her mind later, and it really doesn't matter what she thinks anyway because the sentence is up to me. And when I review the guidelines, based

---

the waiver of the defense was therefore entirely proper.

3

> on the probation report and the lawyers' arguments, I might come
> to a different answer, or I might think the case requires a higher of
> lower sentence than the one provided by the guidelines.[2] The point
> is that that letter does not represent a guarantee or a promise that
> your sentence will be within that range.

(Id. 12.) Defendant acknowledged that he understood. (Id.) Finally, defendant agreed that no one had promised or offered him anything to get him to plead guilty. (Id. 13.)

In the face of this record, any claim that Perez-Gallegos did not understand the terms of his guilty plea is absurd. The Court made painfully clear to defendant that no agreement or promise existed, and fully explained the meaning of the Pimentel letter, the absence of any promise with respect to the sentence to be expected, and the defendant's exposure to a sentence of up to 20 years' imprisonment. Defendant's own admission that his attorney had explained the consequences of his plea, and his failure to question or express surprise at any of the Court's warnings and admonitions, undermines any claim that his attorney had not explained these matters to him beforehand, but even if counsel had not done so, any error would be harmless, because the plea was not entered until the Court had fully advised defendant of the relevant terms of the plea.

II. Ineffective Assistance at Sentencing

Petitioner argues that his attorney was ineffective at sentencing in various ways. While not all of these claims are separately numbered or clearly distinguished, the Court will construe the pro se petition to raise every argument alluded to in the petition.

---

[2] This warning proved prophetic, as the Government had in fact significantly underestimated defendant's criminal history. As calculated by the Probation Department and found by the Court, without objection from defendant either at sentencing or in his present petition, defendant's criminal history category was VI, not III as calculated in the Pimentel letter, and the guideline sentence recommendation was in fact 77 to 96 months.

First, petitioner argues that his attorney was ineffective in failing to object to the Court's erroneous reference to an "apparent history of resisting arrest." (Sent. Tr. 13.) The statement was incorrect – although defendant had a history of providing false names when arrested (PSR ¶¶ 23, 28), he had no history of resisting arrest – and defense counsel clearly should have corrected the Court's mistaken recollection of defendant's criminal history. Petitioner cannot, however, demonstrate that he was prejudiced by this error, as the error was harmless. As the Court of Appeals noted in applying plain error analysis to reject defendant's challenge to his sentence on direct appeal, the sentence imposed was not affected by the Court's mistaken belief about defendant's criminal record:

> The District Court imposed a sentence within the applicable Guidelines range based on its view that "there is a particular premium in adhering to the [Sentencing G]uideline recommendation" in illegal reentry cases. Sentencing Tr. 12. The District Court viewed Perez-Gallegos's "significant criminal history" as a reason not to grant "any unusual leniency" to Perez-Gallegos, id. at 13, referencing Perez-Gallegos's "apparent history of resisting arrest when apprehended," id., only as an additional reason for declining to impose a below-Guidelines sentence. Perez-Gallegos thus cannot show that the District Court based its decision not to impose a below-Guidelines sentence on its mistaken view of Perez-Gallegos's criminal history

United States v. Perez-Gallegos, 218 Fed. Appx. 37, 38 (2d Cir. 2007).

The full record of the sentencing makes clear that the error was harmless. The Court provided a detailed analysis of its reasons for imposing a guideline sentence in the case. The Court began by noting that the principal purpose of sentencing in illegal re-entry cases are punishment and deterrence, and that in the Court's view, those purposes are ones that are the "least individualized" of the purposes set out in the sentencing statute, purposes "in which the general perspective of the Sentencing Commission on what is necessary for deterrence and

5

maintaining respect for law [tend to] outweigh the individualized aspects of the case." (Sent. Tr. 12.) Similarly, the Court noted that because the facts of such cases tend to be "fairly standard," the additional statutory factor of "the need to treat similarly-situated persons similarly . . . further supports the imposition of the guideline sentence." (Id.) The Court then noted that the defendant's "significant criminal history" provided an "additional argument[ ] against any unusual leniency." (Id. 13.) It was in this context that the Court made the erroneous remark about resisting arrest.

After discussing and rejecting a number of arguments made by the defense in mitigation (id. 13-15), the Court returned to the subject of defendant's criminal record, noting that the fact that Perez-Gallegos had avoided further legal troubles in recent years was already taken into account in the computation of the criminal history score, and that the defendant's record "does reflect a serious risk of recidivism and a serious criminal history." (Id. 15.) The Court had already explained its reasoning in finding that the criminal history category determined by the Sentencing Guidelines was appropriate, "so that any reviewing court can have the benefit of my thinking on the subject" of a possible downward departure or other variance on the ground that the guideline category overstated the seriousness of defendant's record:

> This defendant has five felony convictions. I noted, however, that these result from only two court proceedings and led to only two jail sentences. The offenses are relatively low-level narcotic[s] sales is New York and a series of burglaries in New Jersey.
>
> Criminal History Category VI is the highest category there is, and this criminal record is certainly not the worst I have seen by a long shot. On the other hand, when carefully considering the details of the cases, I noted that the three New York cases related to three widely separated drug offenses committed over a period of a year and a half and the second two were committed while Mr. Perez was on bail from the first. Moreover, the New Jersey convictions

6

> stemmed from two separate indictments and . . . involve[d] more than one act of theft or burglary.
>
> So while the seriousness of the criminal record could reasonably be disputed, as to exactly how bad it is, it is certainly clear that the defendant is a persistent offender, and while the Criminal History category appears high, I can't in good conscience say that it significantly overstates his potential for criminal activity.

(Id. 4-5.)

This extensive analysis of the defendant's criminal record, in which any mistake about resisting arrest played no role whatsoever, makes entirely clear why the Court regarded Perez-Gallegos's record as warranting the guideline sentence. The passing reference to that mistaken belief thus did not affect the Court's sentence. Now that the mistake has been corrected and the sentence revisited, the Court is firmly persuaded that it would have imposed the same sentence had counsel pointed out the mistake. Counsel's failure to do so was thus harmless beyond a reasonable doubt.

Second, petitioner argues that counsel was ineffective in failing to argue that the applicability of the 16-level guideline enhancement for re-entry defendants whose deportation followed conviction for an aggravated felony, and/or the same factor insofar as it increased his maximum sentence exposure under 18 U.S.C. § 1326(b)(2), should have been submitted to a jury.[3] Counsel was not ineffective in failing to make this argument, because any such argument would have been frivolous. Even prior to United States v. Booker, 543 U.S. 220 (2005), the Supreme Court had made clear that sentencing factors that relate only to a defendant's prior criminal record – including the specific factor at issue here – need not be submitted to a jury.

---

[3] Petitioner makes no argument that he had not been convicted of an aggravated felony, or that he was not in fact guilty of the enhanced version of the offense.

7

Almendarez-Torres v. United States, 523 U.S. 224 (1998). The Supreme Court expressly adhered to that rule in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), and the Second Circuit has acknowledged that "the 'prior conviction' exception . . . remains the law." United States v. Estrada, 428 F.3d 387, 391 (2d Cir. 2005).

Third, petitioner contends that counsel was ineffective in failing to argue for mitigation because of "the defendant's status as a deportable alien with family ties, and cultural assimilation." (Pet. Mem. 1, 23-26.) This contention is meritless. To the extent petitioner contends that counsel should have emphasized that deportable aliens will suffer additional punishment in the form of separation from the United States and harsher conditions of confinement, the argument would have been unavailing. This Court has frequently rejected claims of this sort, because accepting them would mean that aliens would systematically receive shorter sentences than citizens for identical crimes. Whatever merit such an argument might have with respect to other offenses, moreover, it has even less with respect to re-entry offenses, where the guideline recommendation can only apply to aliens and thus must take into account the collateral consequences of conviction in such cases. In any event, the Court was plainly aware of defendant's status as a deportable alien, and defense counsel did in fact argue for leniency based on his family ties, both orally (Sent. Tr. 6-7) and in a written sentencing memorandum (Sent. Mem. 1-2, 7-8.) Finally, defense counsel notes that he made the entirely reasonable professional judgment not to argue "cultural assimilation," because defendant's situation was readily distinguishable from the circumstances in the leading case in which such an argument had succeeded. (Statsinger Decl. ¶ 16, citing United States v. Martinez–Alvarez, 256 F. Supp.2d 917, 920-21 (E.D.Wisc. 2003).) There is simply no basis in this record for a finding

8

that counsel fell below a standard of reasonable professional performance in any way.

III. Subsequent Amendment of the Guidelines

Finally, petitioner somewhat confusedly argues that defense counsel should have raised an argument that the Sentencing Commission has amended the criminal history rules since the preparation of the presentence report. (Pet. Mem. 1, 19-23.) As the amendments referred to did not become effective until November 1, 2007, long after petitioner was sentenced in July 2005, defense counsel cannot be faulted for failing to address them. Petitioner appears to recognize this, as he refers to various amendments made effective in 2007 and 2008, and argues extensively that the amendments should be applied retroactively.

Construing the argument liberally, as befits a pro se petition, as a motion for a reduction in sentence, the motion must nevertheless be denied. The only amendment to the Sentencing Guidelines that could have any application to petitioner's guidelines calculation is amendment 709, which became effective on November 1, 2007. This amendment simplifies the rules for counting prior sentences as separate or as single sentences. Under the new rule, petitioner's three New York sentences for narcotics sales would still count separately, because each offense was committed after the arrest for the previous sentence. (See PSR ¶¶ 22-28.) His two New Jersey convictions, however, would apparently now be counted as a single sentence, because it appears that he was arrested only once, and then charged in separate indictments with separate offenses that were disposed of by concurrent sentences imposed on the same day. (PSR ¶¶ 29-35). See U.S.S.G. § 4A1.2(a)(2). If these two sentences were counted as one, defendant would have 12 criminal history points rather than 15, and his criminal history category would be V, not VI, resulting in a guidelines range of 70 to 87 months, rather than 77 to 96 months.

9

Contrary to petitioner's argument, however, the Sentencing Commission has not made amendment 709 retroactive. See U.S.S.G. § 1B1.10(c) (listing retroactive amendments). Since the Court has authority to reduce a sentence as a result of a subsequently lowered guideline recommendation only where such a reduction is consistent with the Sentencing Commission's policy statements on retroactivity, 18 U.S.C. § 3582(c)(2), the change in the criminal history rules does not authorize the Court to reduce Perez-Gallegos's sentence.[4]

## CONCLUSION

Accordingly, for the reasons stated above, petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. Petitioner may, however, pursue any further appellate remedies in forma pauperis. To the extent petitioner's motion can be construed in part as requesting a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2), that request is also denied.

---

[4] It should be noted that the failure to make the new criminal history rules retroactive works no injustice on Perez-Gallegos. Unlike, for example, the reduction in the guideline recommendation for offenses involving crack, the change in the criminal history score rules does not reflect a new understanding of the seriousness of a category of offense, but merely simplifies the imperfect process of calculating criminal history scores. In sentencing Perez-Gallegos, the Court expressly recognized that "the method of calculating [c]riminal [h]istory scores is necessarily somewhat approximate and it is often the case that that calculation overestimates or underestimates the defendant's actual potential for wrongdoing." (Sent. Tr. 4.) The Court then considered the specific facts of defendant's prior record, including the fact that the New Jersey convictions involved separate incidents, and concluded that the calculation fairly represented his potential for recidivism. A change in the technical calculation does not affect the substance or seriousness of petitioner's criminal history.

SO ORDERED.

Dated: New York, New York
      August 7, 2008

                                          GERARD E. LYNCH
                                          United States District Judge